on behalf of plaintiff appellant Clifford George. If I may I'd like to reserve one minute of my time. Your Honor, as this case presents what we ultimately believe are three independent Fourth Amendment claims. But if I may I'd like to start with the rectal cavity search, which is the claim. Before we get there I need to, I've got to get through one barrier to getting there that I can't follow. The request for admissions. Those are deemed admitted unless we do something and I'm not quite sure what you're asking that we do about them. But one of the deemed admissions is that, I'm paraphrasing, but that Mr. George would have died but for the search and withdrawal of the cocaine. Right. And if we leave those as they are I don't know how we get past that for purposes of reaching the issues you want us to. Respectfully, Your Honor, the district court has already sustained Mr. George's objection to the magistrate judge's refusal to allow his answers to the request for admissions into the record. So the way that this had initially played out is Mr. George requested an extension of time to respond to various motions. The magistrate judge denied that motion as moot, believing that it, well, reading that request literally didn't apply that motion for an extension to his request for admissions. The magistrate judge then granted Mr. George an extension of time to file a status report to August 18th. It was then on August 18th that Mr. George filed his answer to the defendant's request for admissions. Now, when the defendants ultimately moved for summary judgment, they predicated their motion for summary judgment primarily upon the fact that he did not reply to the request for admissions in a timely manner. When the magistrate judge ---- Kennedy, for just a second. I think we'll probably end up in the same places. But I read the district judge's order. He said, well, if I were not precluded, I would overrule the magistrate on this point, but I'm precluded, he says. That's the way I read it, too. The closing line of the district court's decision is that he adopts the magistrate's report and recommendation with the two exceptions. The two exceptions being his decision that the request for admissions shouldn't ---- that Mr. George's response to the request for admissions shouldn't ---- Where are you reading? So this is the district court's opinion. It's the end of the excerpts of record. Page 210 in the excerpts? Yes. Number 1, following its hereby order, the report and recommendation is approved and adopted with the above exceptions. Those two exceptions being, accordingly, on that same page, plaintiff's motion should have been granted. That was his motion for the district judge to permit him ---- excuse me, his motion to the magistrate judge that his response to the request for admissions be ---- I don't think it's worth debating, because I think I'm going to get the same place you want to get on this point. But he's previously said, although procedurally precluded from reviewing the magistrate judge, the Court observes the plaintiff's motion should have been granted. And you're now saying, repeating, he says should have been granted, but he's already said it's precluded from granting it. So you say the above exceptions. I'm not sure what you're referring to, but I don't think it needs to be debated. That's fine. You can go ahead to the merits now. I'm not sure what the judge is referring to. Well, the judge is ---- I think the judge is referring to Rule 72a, but Rule 72a plainly doesn't preclude him from doing that. Right. All right. So I'll ---- if I may, I'll move on to the bodycat research. Now, the defendants do not dispute our argument on the underlying merits that assuming a conspiracy did take place, Mr. George's Fourth Amendment rights were violated when the defendants, without a warrant, forcibly searched his rectal cavity under general anesthesia. Instead, their sole argument with respect to the rectal cavity search is that we have not pointed to any evidence in the record demonstrating that a conspiracy did exist. But that is plainly incorrect. And that's incorrect in large measure along the same lines that we've just been discussing. The district court, in adopting the magistrate's report and recommendation, did so subject to two exceptions. One of those exceptions was that he sustained George's objection to the magistrate's ruling that his complaint should not be admitted as a verified complaint. In sustaining Mr. George's objection, the district court effectively admitted Mr. George's complaint as a sworn affidavit, which a verified complaint for purposes of summary judgment serves as a sworn affidavit. It's held to the same standards. What do we do about the issue of serving and then bringing into the case of Dr. Edholm? I mean, that one puzzles me. I'm not sure what we're supposed to do with this. I think probably the proper course of action there would be to reverse and remand with an opportunity for, one, we think there are things here that Mr. George could amend his complaint to restate. In so doing, he could serve again Dr. Edholm, or if, for whatever reason, he chooses not to amend his complaint, to move for judgment against Dr. Edholm for Dr. Edholm's failure to respond. Now, assuming that it's a genuine document here, that he's, you know, he mailed this and so on, is that proper service, to mail it to the hospital attention, Dr. Edholm? I think for purposes of prisoner litigation, yes, Your Honor. And your authority for that is? I guess the State can respond to Dr. Edholm. Well, we don't have anybody representing Dr. Edholm. Right. Part of the problem is Dr. Edholm never responded, so it's difficult for us to say on the bus whether or not he actually ever saw the papers or whether or how. What is the California statute on that? I mean, is it nailing it to the person's work address is? In truth, Your Honor, I'm not certain. No, okay. So. Well, my understanding of the California statute is you have to have an acknowledgement back in order for service by mail to be good, and you don't have one. If there is some other authority that says because he's a prisoner he can serve Dr. Edholm by mail to the hospital, I'm unaware of it. I would like to know that. If you don't have that, then he's been dismissed with prejudice for failure to serve him. Well, failure to serve, Your Honor, respectfully, is a basis for dismissal without prejudice. Now, it's true the magistrate here recommended dismissing with prejudice, but the Federal Rules of Procedure provide that if there isn't a response, excuse me, if the person isn't served, I think it's within 120 days of filing the complaint, it's a basis for dismissal without prejudice. So once again, I think the appropriate course of action with respect to Dr. Edholm would be to remand and allow Mr. George to serve him. What's the reason for having Dr. Edholm in the case? Well, he's ultimately the one who conducted the search. Yeah, I don't think he's an indispensable party, so it's certainly true, I think, that the claim against the officers could move forward with that. You're trying to make him a state actor for purposes of 1983 under the joint concert theory, really not conspiracy, although conspiracy was what was alleged. It's really more joint, he's a state actor and he's independently liable because he was acting in conjunction with the police at that point. I mean, so the conspiracy theory is necessary to impute Dr. Edholm's conduct. Well, and if you don't have Dr. Edholm as a defendant, the nurses seem to be sufficiently out of it. I think any claim, even properly served, I think the nurses, there's no plausible conspiracy theory as to them. But if you don't have Dr. Edholm and the nurses, there's no need to plead conspiracy. You've just got 1983 suit against the officers, correct? I think to bring Dr. Edholm's conduct in, because Dr. Edholm ultimately is the one who conducted the search, I think in order to impute the search to the officers, I'm fairly certain there would have to be a conspiracy. The doctors would have had to have worked in concert with the doctor. But ultimately, that's not too much of a concern for us because there is evidence in the record demonstrating that the officers did conspire with Dr. Edholm. And you don't need Dr. Edholm as a party in order to bring suit against the officers. That's right. That's correct. Put on whatever evidence you need with respect to what the cooperation was between Dr. Edholm and the officers. That's exactly right. So Dr. Edholm's presence in this case ultimately doesn't bear on whether or not the case should proceed against the officers. That's right. Now, as to the existence of the conspiracy, at this stage in the litigation, our burden is really very low. We need point only to evidence that demonstrates a possibility that a jury could find that the officers worked together towards a common goal with Mr. Edholm, namely the recovery of the evidence. And certainly Mr. George's verified complaint, which again serves as a sworn affidavit for purposes of summary judgment, satisfies that end. Now, of course, even if the verified complaint weren't a part of the record, we have the medical report, which indicates that Dr. Edholm believed aggressive management was necessary from the outset. Now, under ordinary circumstances, it's a patient's own medical decision-making that governs. Here, Dr. Edholm evidently believed that Mr. George's preference not to be treated was something to be overcome. A jury might infer because he was acting under instructions from the officers. Maybe you have a claim against him for malpractice. Certainly that's a possibility or state law battery. Again, when and if the case is remanded, Mr. George may be able to amend his complaint with additional claims. They might be time-barred, although they might be told. I don't know. There are two other claims in this case. The next claim is the parole compliance search of Mr. George's home. After this Court's decision in Lopez and the Supreme Court's decision in Sampson, it's clear that in order for officers to conduct a suspicionless search of a parolee's home, they may do so only in accordance with the conditions of the parolee's release. And if the conditions of the parolee's release do not put the parolee on notice of a clear and unambiguous condition subjecting the parolee to suspicionless searches of his home, then he maintains a reasonable expectation of privacy in his home against suspicionless searches. And we submit on this Court, too, that defendants have failed to meet their burden of producing any evidence to overcome. Yes. So it's my understanding, in fact, that his parents had recently moved out. But it had been his mother's apartment. That's correct. And then is the last argument you want to make under the Terry stop? I'm sorry? Is the last argument you want to make has to do with the detention when he was running away? Yes, that's right, Your Honor. The defendants don't argue that the police officers had articulable suspicion. And this Court has made clear that an after-the-fact discovery of a parole status can't justify it. How about before-the-fact discovery if he's running away? Well, certainly, Your Honor, under certain circumstances, as the Supreme Court has put it, headlong flight can do it. All right. Thank you, Counsel. You're over your time. Good morning, Runners. May it please the Court, Sharon Opedenko on behalf of Pomona Police Officers Freeman and Johnson. I would also like to start with the issue of the rectal cavity examination performed by Dr. Edholm. Well, if you don't mind, let's go back to the request for admissions one more time. If you don't have those, can you win? Yes, I believe so. Going back to the issue of whether there is a conspiracy between Dr. Edholm and the officers, the record just does not support a finding of a conspiracy. Aren't there fact questions all over the place about that? I mean, he says one thing, they say something else, the nurses said something, the paramedics said something. It seems inherently fact-based. Well, that is true. The main assertion by Mr. George is that when the officers brought Mr. George to the hospital, which, as documented by the hospital records, was for the purpose of a medical clearance prior to booking, that the officers told hospital staff they suspected that he had inserted drugs or some foreign object in his rectal cavity and that they, quote-unquote, needed it out now. However, the hospital record does not support that that, in fact, happened. Sounds like you've got a dispute. Well, although under the summary judgment standard, Mr. George is only entitled to reasonable inferences. I think, as Judge Lynn has, she's got the crux of the case. If you don't have those requests for admissions, then you have nothing but genuine issues of material fact left. Because the only way you could win is if all of those facts in your favor are deemed admitted. On summary judgment, I'm not saying you're not going to win ultimately. Well, but the thing is, Mr. George does not deny the majority of the facts that we rely on in support of our motion. He does not deny the fact that the hospital staff, the hospital staff, there's no record in the hospital records that the hospital staff was following some, quote-unquote, instruction by the officers. The intake of Mr. George appears to be normal. The rectal cavity examination was not begun immediately if the officers had said, as Mr. George asserts, we need this out now. Also, he's the non-moving party, and now you're arguing all the inferences in favor of the moving party. And that's not the summary judgment standard either. That is correct. That is correct. Let me back up if I can. I think I know the answer to this. But do you now agree that the admissions were improperly counted by the magistrate judge or not? I don't. No, we don't. We don't believe that the ---- So you think the request for admission should have been deemed admitted on this record? Yes, I do. And why do you think that? Well, I believe that the district court judge's order is unclear. And I also believe that, as noted in the order, there wasn't authority for the district court judge to simply set aside the findings of the magistrate judge. Okay. Assume that I disagree with that. Assume that the district judge has the authority, and therefore we have the authority, to set aside the magistrate judge's order. So now we've got to go look at the magistrate judge's order on the merits and decide whether the magistrate judge was correct in deeming the request for admission as admitted. Was the magistrate judge correct? I believe that the magistrate judge was correct in deeming that they were admitted. Because? Because the request that Mr. George made for an extension of time to file his discovery responses was made, if I'm not mistaken, he wanted to serve the responses a mere five days before discovery cut off in the case. The city, the officers did not deny the request for an extension outright. They said, okay, we'll give you an extension, just not as long as an extension as you're requesting. And so I believe that the magistrate judge was well within his authority to rule that the responses were untimely. But as I read the magistrate judge's order saying, well, you have to submit the whatever it is by the 18th, that was totally opaque to me. And it seemed to me a permissible understanding, as apparently Mr. George had the understanding that he was allowed until the 18th to respond to the request for admissions, which he did. Well, I have to admit that I don't quite understand what the magistrate judge did there. Yeah. I mean, it was pretty hard to understand. It is a difficult order, too. And if the lawyers have trouble understanding it, I think Mr. George is going to have real trouble understanding it. Well, isn't it true that a key of the deemed admissions that is essential to your side of the case is false? That is, we're deeming true what we, I believe the record demonstrates to be false, which is that his life was in jeopardy and he was saved by Dr. Ed Holm's efforts. I'm paraphrasing, but that's in effect one of the requests for admissions that's deemed admitted. And there's absolutely no evidence to substantiate that, that his life was in jeopardy and Dr. Ed Holm came riding to save him through this procedure. Is that substantiated by anything else in the record other than that deemed admission? The documents of the hospital records indicate that Dr. Ed Holm did consider Mr. George's condition, quote, unquote, life-threatening. He also noted various other symptoms that Mr. George was demonstrating, abnormal sinus rhythm, the fact that Mr. George informed the hospital staff that he felt, quote, unquote, weird, that the... I contest that statement, too. He says that he denies informing the hospital staff that he was weird. Those are two different statements. Those are two different ideas. Nowhere does he deny telling hospital staff that he felt weird. Well, part of the trouble is we're dealing with someone who's not only pro se, but who's a little bit imprecise in his use of language. He doesn't say, I didn't tell them that. He says, I was not weird. Well, what am I supposed to understand by that? I think I'm supposed to understand by that, given the request for admission, that he didn't say it. But I was not weird is a little bit opaque. I don't act weird. I mean, the question is, did you feel weird? Well, a fair understanding of that is that he denied saying it. Well, in addition to that, the hospital records state that the discharge report states that Dr. Edholm considered Mr. George's condition likely drug-induced, as interpreted by myself, and also that the condition was considered potentially life-threatening at the time. I think there's a big question about whether all of that stuff that's in the medical records was in the medical records because of the police wanting to get whatever he had secreted in his cavity out. And they wanted to get it out, and they didn't want to do it. I mean, what medical emergency really was there? That Dr. Edholm suspected cocaine intoxication, and although... At the jail. He had a seizure at the jail. That's the whole reason that Mr. George was taken to... Did he? I mean, based on this evidence, did we know that he had a seizure? Well, that's the... The police officers aren't qualified to render an opinion as to whether... They're the ones who said he had a seizure and he had to go to the hospital. Well, he appeared to have been having a seizure, and they took him to the hospital for medical clearance. I'm sorry. Well, the alternative interpretation of those facts is that he was driving on the ground because he was sticking something up himself to hide it from the police, not that he was having a seizure. And the police saw some plastic, and they decided... I mean, who knows what really happened, but I'm just saying there are alternative facts, right? That is true. What I was about to say is that the paramedics, as I recall the evidence, would not conduct a rectal cavity search, said he was fine, or I'm paraphrasing, but that he wasn't in distress, which suggested, and I think this inference has to be drawn in Mr. George's favor, that he had concocted this to give himself an opportunity not from Dr. Edholm, it's from one of the nurses, and the nurses said that there wasn't anything significant that dictated that this be removed immediately, as opposed to letting this pass through normal body processes. Right, and if that is the inference to be drawn, then I think that brings up a whole separate issue of whether Mr. George's constitutional rights were even violated in the first place through the rectal cavity examination. I would submit that the situation is very much analogous to the situation of the long line of cases of border crossing cases, where people come into this country, have secreted illegal substances in their rectum, and the courts have consistently found that rectal cavity searches, as long as they're performed either by a doctor or a trained customs agent in sanitary, private areas, are considered constitutional because of the reduced expectation of privacy that one has coming over the border. But border search cases really are a different category of case. I would argue that they're very similar, only in the sense that the specific setting where the person is taken or is present at the time of the examination are very similar, a controlled, secure location. I understand that, but it really is a very different category of cases in terms of what searching ability the officers have. That's just established law. We could argue these facts and apply the law to them all day, but you're over your time, and I think we're going to submit the case of George versus at home. I have one question for Mr. George's lawyer. I have one thing to say, too. If we are to send this back down again, it's pretty obvious that Mr. George would be helped if he had an attorney. He will have an attorney. As I was going to say, thank you for taking this on pro bono and for your argument for your firm. Your firm is Meyer Brown.
judges: Lynn, Wardlaw, Fletcher W.